In re Robert Thomas CRAWFORD, and Carolyn Lee Crawford, Debtors.

Eugene V. ALLEN, Trustee in Bankruptcy, Plaintiff,

v.

R. Thomas CRAWFORD and Phyllis J. Evans, as Co–Trustees of the Mildred Evangeline Crawford Trust dated May 27, 1986, and Mildred E. Crawford, Defendants.

Bankruptcy No. 91–8879–9P7.
Adv. No. 93–256.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

July 22, 1994.

---

Diane L. Jensen, Ft. Myers, FL, for plaintiff.

Daniel A. Medeiros, Sarasota, FL, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is a Complaint filed by Eugene V. Allen (Trustee), who seeks to set aside a certain transaction by Mildred E. Crawford (Defendant). The Trustee's claim for relief is set forth in his three Count Complaint.

In Count I the Trustee seeks to avoid the transaction as a fraudulent transfer based on Fla.Stat. § 726.105; the Claim in Count II is based on Fla.Stat. § 726.106(1) and the claim in Count III is based on § 550 of the Bankruptcy Code. The facts relevant to the resolution of the respective claims of the Trustee as they appear in the record established at the Final Evidentiary Hearing are as follows.

On January 7, 1992, the Trustee for the estate of R. Thomas Crawford and Carolyn Lee Crawford (Debtors) filed an adversary proceeding and sought to recover a certain transfer based on a claim of voidable preference from R. Thomas Crawford to the mother of the Debtor, Ms. Mildred E. Crawford. On August 14, 1992, this Court entered a Final Judgment in favor of the Trustee and against the Defendant in the amount of $30,-120.00, plus interest. On or about December 2, 1992, the Trustee obtained a Writ of Execution and sought to enforce the Judgment, albeit without success, because the Writ was returned unsatisfied.

Prior to the filing of this Adversary Proceeding the Trustee demanded payment of the Judgment from the Defendant by a letter dated December 16, 1991. (Exhibit C to the Complaint).

The Trustee having been unable to locate any properties of the Defendant which could be levied on to satisfy the judgment, commenced discovery in aid of execution. The discovery revealed that the Defendant created a revocable trust on May 27, 1986, the Mildred Evangeline Crawford Trust (Original Trust). On January 7, 1992, the Trustee filed the adversary proceeding described earlier and sought to set aside the Trust Amendment and to levy on the corpus of the trust to obtain the funds to satisfy the judgment obtained against the Defendant. On January 23, 1992, or after the Trustee made a demand on the Defendant, the Defendant executed an Amendment of Trust (Trust Amendment) changing the Original Trust from a revocable to an irrevocable trust and also resigned as Trustee. Pursuant to the Original Trust and prior to the execution of the Trust Amendment, the Defendant was the sole Trustee of the trust. As a result of the Amendment the Debtors, Phyllis J. Evans and R. Thomas Crawford were named as successor co-trustees.

It is admitted that after the execution of the Trust Amendment, the Defendant became insolvent in that she did not have sufficient assets to meet her liabilities specifically to satisfy the Judgment obtained by the Trustee. It is equally without dispute that she received no consideration for divesting herself of her interest in the corpus of the trust, the result of which she put the trust assets out of the reach of her creditors, particularly the Trustee. It is also without dispute that the trust was funded solely by the monies she received as a result of the transfer which was determined by this Court to have been a voidable preference pursuant to § 547 of the Code. The record reveals that no income tax returns or gift tax returns have been filed by the trusts since the Trust Amendment was executed.

In opposing the Trustee's claim, it is contended by the Defendant that she became aware in 1991 that her memory was failing and that she was feeling at times confused and could no longer think clearly and to attend to her personal affairs and she asked her children for advice. According to her they mutually agreed it would be best to modify the original Trust and change it from a revocable to irrevocable trust. She also claims that she decided to resign as trustee in order to place her children in charge of the trust and to give to them full access to her assets so they could pay her medical expenses and to attend to her personal needs. It should be noted in this connection, however, that the change was not accomplished until January 23, 1992 or several

months after she agreed to amend the Trust Agreement and certainly after the Trustee's demand and after the Trustee filed the instant adversary proceeding.

At no time did her children ask the Defendant to stop driving, despite the fact that she supposedly was worried about her driving ability and her claimed confused state of mind.

These are the undisputed facts which, according to the Trustee, would warrant a determination by this Court that the execution of the Trust Amendment was a fraudulent transfer thus voidable pursuant to Fla.Stat. § 726.102(12). In light of the undisputed fact that the transaction attacked by the Trustee does not appear to be a transfer in the commonly accepted sense, it is proper to direct the initial inquiry to the question whether or not the amendment of the Trust Agreement was a "transfer" within the meaning of that term used in the Statute on which the Trustee's claim is based. This Statute provides:

"Transfer" means every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance.

The definition of the term "transfer" as used in this Statute is basically identical to the definition of the term used by § 101(58) of the Bankruptcy Code and is intended to cover any transaction whereby a transferror divested himself or herself, directly or indirectly, of any cognizable interest, legal or equitable, in the property of the transferror. Based on the broad definition of the term both by the Statute relied on by the Trustee as well as the definition of the Code, this Court is satisfied that the execution of the Trust Amendment was a transfer within the meaning of that term used in Florida Statute 726.102(12). By relinquishing her trust powers and relinquishing her dominion and control over the trust assets the Defendant "part[ed] with an ... interest in an asset" and but for the Trust Amendment she could have invaded the assets in the trust at any time. Thus, it is without question that the Trustee could have seized the corpus of the trust before the Trust Agreement was amended, the funds in the Trust were the very funds she received through the transfer declared to be preferential and which is the basis of the judgment obtained by the Trustee. Having concluded that the execution of the amendment to the Trust Agreement did in fact effectively operate as a transfer of the Defendant's interest in the corpus of the trust, this leaves for consideration whether or not the Trustee established with the requisite degree of proof all the requisite elements of a viable fraudulent transfer claim under Fla.Stat. §§ 726.-105 and 726.106(1). Fla.Stat. § 726.105 provides:

"(a) transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation incurred, if the debtor made the transfer or incurred the obligation: (a) with actual intent to hinder, delay or defraud any creditor of the debtor."

Subsection 2 of Florida Statute 726.105 provides:

"[i]n determining actual intent under paragraph (1)(a), consideration may be given, among other factors to whether:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was for substantially all of the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the assets transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider or the debtor.

■ The execution of the Amendment of the Trust Agreement meets a majority of the factors set forth in the Statute. The execution of the Trust Amendment was not disclosed until after the judgment was obtained against the Defendant and the execution of the Trust Amendment occurred after the Plaintiff's demand letter of December 16, 1991 was sent to the Defendant and after the Trustee had already filed the present adversary proceeding attacking the execution of the original Trust Agreement. The transfer of trust powers to her children effectively divested the Defendant of one of her assets and was made without consideration. This Court is satisfied that the Defendant's intent in executing the Trust Amendment was to shield the corpus of the trust from Creditors, specifically the Trustee.

■ Even assuming without conceding that the execution of the Amendment of the Trust Agreement by the Defendant was made because of her poor health and she might die for the specific purpose to defeat the claim of the Trustee, a point not conceded. It is evident based on this record that the transaction is still voidable as a fraudulent transfer and could be set aside by the Trustee.

Florida Statute 726.106(1) provides:

"a transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at the time or the debtor became insolvent as a result of the transfer or obligation."

As noted earlier, the Trustee's claim arose when the Trustee filed his complaint on January 7, 1992 seeking to recover the payment received by the Defendant on the basis that it was a voidable preference. The Trust Amendment was not executed until January 23, 1992, or approximately two weeks after the Trustee's suit was actually filed. The Defendant admits in the Stipulation that no consideration was paid or given to her by her trustees at the time that the Trust Amendment was executed and, further, that after the Amendment of Trust she was insolvent.

Based on the foregoing, this Court is satisfied that this record supports the Trustee's claim and supports the findings that the Trustee did establish all operating elements of a voidable fraudulent transfer both pursuant to Fla.Stat. § 726.105 and Fla.Stat. § 726.106(1). Even assuming without admitting that she executed the Amendment because of her failing health and confused state of mind, it is clear that she did not receive a reasonable equivalent value for the transfer and even if she was not insolvent at the relevant time she clearly became insolvent as a result of the transfer.

A separate final judgment shall be entered in accordance with the foregoing.