814 So.2d 1227 (2002)
NATIONSBANK, N.A., successor in interest by merger to Intercontinental Bank, Appellant,
v.
COASTAL UTILITIES, INC.; Michael F. Iacobelli; Christopher J. Iacobelli; Henry Pierson, Jr.; and Patricia Iacobelli a/k/a Patricia J. Maczko, Appellees.
No. 4D01-1485.
District Court of Appeal of Florida, Fourth District.
May 1, 2002.
*1228 James J. Webb of Haley, Sinagra & Perez, P.A., Fort Lauderdale, for appellant.
Nestor Bustamante, III of Ferencik Libanoff Brandt and Bustamante, P.A., Fort Lauderdale, for Appellee-Patricia Iacobelli.
STONE, J.
We reverse a summary judgment entered against Nationsbank, N.A. ("bank"). The bank is a judgment creditor on a *1229 judgment obtained against Coastal Utilities, Inc. and Michael Iacobelli.
Post-judgment, Iacobelli was deposed and the bank learned of a Janus account owned by Iacobelli and his wife, Patricia Maczko. The Janus account was originally opened in February 1996, before Maczko and Iacobelli were married, as a joint tenancy with right to survivorship. Iacobelli failed to produce documentation concerning the account until sanctioned, and by that time, the account was empty.
According to the deposition of Maczko, approximately one year after the final judgment, Maczko, with the advice of her attorney, transferred approximately $260,000 out of the Janus account and into her own separately owned checking account and into various Janus accounts. Maczko stated that she made the transfers because she was concerned about protecting her money from the bank's judgment. Since that time, Maczko has withdrawn the funds.
The bank's claim against Maczko alleged that transfers from Iacobelli to Maczko were fraudulent and requested, among other things, that Maczko be ordered to surrender all withdrawn funds. The trial court subsequently entered the summary final judgment against the bank, concluding that Maczko had undivided possession and ownership of the funds at issue and could, thus, dispose of the assets as she saw fit.
In its action against Maczko, the bank utilized supplementary proceedings under section 56.29, Florida Statutes (1999), a procedural mechanism to assist judgment creditors in recovering fraudulent transfers. It allows the judgment creditor to go after third parties to the extent that they may have property belonging to the debtor.
In determining whether a transfer to a third party is invalid, as a fraud on creditors, the Uniform Fraudulent Transfer Act (UFTA) applies. The bank sought to impose liability under sections 726.105 and 726.106 of the act. Under section 726.105(1)(a), Florida Statutes, a transfer by a debtor "is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made ..., if the debtor made the transfer ... with actual intent to hinder, delay, or defraud any creditor of the debtor...." See Morton v. Cord Realty, Inc., 677 So.2d 1322, 1324 (Fla. 4th DCA 1996). Pursuant to the statutory scheme, the creditor is to demonstrate that: (1) there was a creditor to be defrauded; (2) a debtor intending fraud; and (3) a conveyance of property which could have been applicable to the payment of the debt due. Huntsman Pckg'g Corp. v. Kerry Pckg'g Corp., 992 F.Supp. 1439, 1446 (M.D.Fla.1998).
Section 726.106, Florida Statutes, provides that:
A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.
In the instant case, it is undisputed that the Janus account in question was a joint account with right of survivorship and not a tenancy by the entireties. As to such an account, each person has the right, against the other, only to his or her individual interest in the account. Absent other provision, however, the shares in the joint account are presumed to be equal for purposes of alienation. For purposes of *1230 survivorship, each joint tenant owns the whole, so that upon the death of one joint tenant, the remainder of the fund passes to the survivor. See Beal Bank, SSB v. Almand and Assocs., 780 So.2d 45, 53 (Fla. 2001).
A joint owner's withdrawal of funds from a joint account terminates the "joint tenancy nature of the funds." Sitomer v. Orlan, 660 So.2d 1111, 1114 (Fla. 4th DCA 1995). Upon withdrawal by one party, the withdrawing joint tenant is liable to the joint owner for that person's share of the withdrawn funds. Wiggins v. Parson, 446 So.2d 169, 172 (Fla. 5th DCA 1984). Where a joint tenant withdraws more than his or her share, such a withdrawal is wrongful as between the parties to the account. In re Guardianship of Medley, 573 So.2d 892, 898 n. 4 (Fla. 2d DCA 1991). It is clear that Maczko's position that she had undivided possession and ownership of the funds as a whole mistakenly confuses a joint tenancy with a tenancy by the entirety. The supreme court has recently cautioned against this. See Beal Bank, 780 So.2d at 53.
In the instant case, because the disputed account was a joint tenancy, the bank could have attached Iacobelli's portion of the account. See id. (holding that if property is held as a joint tenancy with right of survivorship, a creditor of one of the joint tenants may attach the joint tenant's portion of the property to recover that joint tenant's individual debt). Before the bank reached the Janus account, Maczko withdrew the funds, including Iacobelli's share. While it was certainly permissible for Maczko to withdraw her share, to the extent that the withdrawal also included her husband's share, it cannot be determined that a fraudulent transfer did not occur.
Although it is true that sections 726.105 and 726.106 both describe fraudulent transfers as those "made ... by a debtor," the definition of a "transfer" is quite broad. In re Crawford, 172 B.R. 365, 367 (Bankr.M.D.Fla.1994). UFTA defines "transfer" as meaning "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset...." § 726.102(12), Fla. Stat. (1999).
The broad definition includes "every" mode of disposing of an asset and does not limit the statute to direct transactions made by the debtor him/herself. Therefore, we conclude that the statute is broad enough to include a transaction where one joint tenant parts with his interest in the joint account by perhaps directing or allowing the other joint tenant to withdraw all or a disproportionate part of the funds.
Summary judgment for Maczko was in error as there are issues of fact in this case to the extent that a fraudulent transfer may have occurred and as to Iacobelli's proportionate interest in the joint funds.
Although the trial court erred in granting Maczko's motion for summary judgment, we find no error in its denying the bank's cross-motion for summary judgment.
Liability is not clearly established under section 726.105. The statute provides that a transaction is fraudulent if carried out with actual intent to hinder, delay, or defraud any creditor of the debtor. Section 726.105(2) lists several factors to be considered, including: (a) transfer between spouses, (b) timing of transfer, (c) insolvency of the debtor, (d) lack of consideration, (e) debtor retained use and enjoyment of asset, and (f) concealment of the transfer. The existence of badges of fraud create a prima facie case and raise a rebuttable presumption that the transaction is void. Stephens v. Kies Oil Co., Inc., 386 So.2d 1289, 1290 (Fla. 3d DCA 1980). *1231 However, in fraud cases, summary judgment is available only in extraordinary circumstances. Id. Here, remaining issues of fact remain as to the extent of Iacobelli's interest in the funds and as to the application of the several "badges of fraud," evidencing intent.
We note that the bank's argument that liability is established under section 726.106 is not properly before this court, as it was not raised in the bank's cross-motion for summary judgment. The bank's cross-motion for summary judgment was based solely on section 726.105.[1]
Therefore, the summary final judgment in favor of Maczko is reversed and we remand for further proceedings.
POLEN, C.J. and GROSS, J., concur.
NOTES
[1] Under section 726.106, a transfer is fraudulent, without regard to intent, when two elements are met: (1) there is a transfer without consideration, and (2) the debtor either was insolvent at the time, or was made insolvent as a result of the transaction. See Munim v. Azar, 648 So.2d 145 (Fla. 4th DCA 1994).