[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-15148

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 20, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 98-02237-CV-T-23-TGW

BEVERLY DILLON,
as trustee of L.I.G. Trust and El Fuente Trust,
NEAL A. STUBBS,
as trustee of Neal A. Stubbs, D.D.S., P.A.,
Profit Sharing Plan & Trust,
CORPUS HAREM, LTD.,

Plaintiffs-
Counter-Defendants-
Appellants
Cross-Appellees,

versus

AXXSYS INT'L, INC.,
f.k.a. Internet Access Co., Inc.,
HYPERION MANAGEMENT GROUP, INC.,
INTERNET MARKETING GROUP, INC.,

Defendants-Appellees,

ADAM M. REISER,
individually,

Defendant-
Counter-Claimant-
Appellee,

DEBORAH AUSTIN REISER,
individually,

Defendant-
Appellee
Cross-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

**(June 20, 2006)**

Before ANDERSON, FAY and SILER[*], Circuit Judges.

PER CURIAM:

This appeal is from an order entered by the district court granting the

motion of appellee, Deborah Austin Reiser, under Fed. R. Civ. P. 50(b) for

judgment as a matter of law as to plaintiffs' claims for the sale of unregistered

securities.  The plaintiffs were investors in an internet business co-founded by the

appellee and her husband. Within months after the plaintiffs invested over a

million dollars in this business, the money disappeared, the issued stock became

worthless and the corporation dissolved. The district court held that the plaintiffs

failed to present any evidence to support the jury's verdict that the appellee

_____

[*]Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting
by designation.

"personally participated or aided in making the sale of unregistered securities." In addition, the appellee cross-appeals the district court's denial of her 50(b) motion regarding the plaintiffs' claims under the Uniform Fraudulent Transfer Act. We affirm.

## I. Factual Background

Beginning in 1996, Mr. Adam M. Reiser ("Reiser") and the Appellee, Mrs. Deborah Austin Reiser ("Austin"), owned and operated an internet service provider business called "Internet Access Company d/b/a/ Boca.net." Austin submitted the official form for transacting business in Florida, which she signed as Vice President and Registered Agent for the corporation. Austin was primarily responsible for all of the business aspects of the corporation, while her husband, Adam Reiser, operated the technical side of the business. In 1997, Reiser was introduced to Dominick Maggio ("Maggio") and Richard Wiles ("Wiles"). Wiles and Maggio agreed to join the corporation and help solicit investors to enhance the company's growth for the goal of going public. Reiser prepared a business plan referred to as the "offering memorandum," which detailed the alleged operations, business purpose, goals and financial situation of the corporation. It is undisputed that the information in this "offering plan" was intentionally misrepresented and grossly fictional.

3

In August, 1997, Wiles and Maggio met with Dr. Neal Stubbs to discuss investing in the company. Dr. Stubbs was given the "offering memorandum" and carefully reviewed the information in considering whether to invest in the company. Maggio also sent the "offering memorandum" to trustee Beverly Dillon ("Dillon") so that she could consider investing on behalf of the El Fuente Trust. On August 18, 1997, Stubbs and Dillon received the "Initial Asset List" prepared by Boca.net. This list itemized certain assets that the company allegedly owned "free and clear." However, the majority of the assets listed were either totally fictitious or not owned by the corporation. In early September, 1997, a dinner meeting was arranged in Ybor City, Tampa, to discuss the potential investment opportunity in Boca.net.[1] During this meeting, Reiser made the same false representations that were previously made in both the "offering memorandum" and the "Initial Asset List." Based on these false misrepresentations, Stubbs and Dillon invested over one million dollars in the company. On November 12, 1997, Stubbs and Dillon were issued unregistered securities in the corporation. Soon thereafter, the money that the plaintiffs had invested disappeared, the securities became worthless and the corporation went belly-up.

---

[1] This meeting was attended by Reiser, Wiles, Maggio, Dr. John Anderson, Dr. Stubbs and Mike Nelson.

The plaintiffs sued both Reiser and Austin for (I) fraud in the inducement; (II) sale of unregistered securities, in violation of Fla. Securities and Investor Protection Act ("FSIPA") §§ 517.07, 517.211; ( III) misrepresentations in connection with the sale of securities; and, (IV) violations of the Fla. Uniform Fraudulent Transfer Act ("FUFTA") § 726.105.

The case was tried before a jury in the Middle District of Florida. After the plaintiffs rested their case-in-chief, Austin moved for a directed verdict on each count. These motions were denied. Reiser and Austin then rested without introducing any additional evidence and the case was submitted to the jury. The jury returned verdicts in favor of the plaintiffs and against Reiser under all four counts. Reiser has not appealed and is not before us.

The jury returned verdicts against Austin under count II, the sale of unregistered securities, and count IV, violations of the Uniform Fraudulent Transfer Act. Austin then renewed her motion for judgment as a matter of law, arguing the plaintiffs failed to offer sufficient evidence to support the jury's verdicts. The district court entered an order dated August 16, 2005, granting judgment as a matter of law as to count II and denied Austin's motion as to count IV. The plaintiffs appeal the order granting a judgment notwithstanding the verdict as to the unregistered securities and Austin cross-appeals the denial of her motion

5

as to the claims under the Uniform Fraudulent Transfer Act.

## II. Issues

The first issue in this case is whether or not the district court properly granted Austin's  motion for judgment notwithstanding the verdict as to count II, the sale of  unregistered securities. This question hinges upon whether or not there was evidence that Austin, "personally participated or aided" in making the sale of the unregistered securities.

The second issue is whether the district court properly denied Austin's motion as to count IV, violations of the Uniform Fraudulent Transfer Act.

## III. Standard of Review

Orders granting judgment as a matter of law are reviewed *de novo*. See Mendoza v. Borden, Inc., 195 F.3d 1238, 1244 (11th Cir. 1999). This court reviews the district court's grant of relief under Fed. R. Civ. P. 50(b) by considering the evidence in the light most favorable to the nonmoving party. See Pulte Home Corp., v. Osmose Wood Preserving, Inc., 60 F.3d 734, 739 (11th Cir. 1995). We review *de novo* a district court's grant of judgment as a matter of law under Rule 50(b), applying the same standard as the district court. In doing so, we

look at the record evidence, drawing all inferences in favor of the nonmoving party. Judgment as a matter of law for the defendant is proper when there is insufficient evidence to prove an element of the claim, which means that no jury reasonably could have reached a verdict for the plaintiff on that claim. See Collado v. UPS, 419 F.3d 1143, 1149 (11th Cir. 2005) (citations omitted). As such, this court must independently determine whether the facts and inferences point so overwhelmingly in favor of the movant that reasonable people could not arrive at a contrary verdict. Pulte, 60 F.3d at 739.

## IV. Analysis

Austin contends that there is insufficient evidence to support the jury's finding that she "personally participated or aided" in making the sale of unregistered securities. She argues that the plaintiffs hinge their case on a "dinner meeting" where allegedly she actively participated in selling securities. However, according to Austin, she was merely present at the dinner and did not personally participate in any discussions concerning the company, its financial condition or investments by third parties. She claims that even though she handled the day-to-

day functions of the company, when it came time to solicit investors and sell stock in the company, her husband handled those matters.

Pursuant to the Fla. Securities and Investor Protection Act, an officer of a corporation incurs joint and several liability to an investor for the sale of unregistered securities if the officer "personally  participates, or aids in the sale of an unregistered security." See Fla. Stat. § 517.211(2) (2005)[2]; see also Fla. Stat. § 517.07(1) (2005). [3] The crux of this claim is whether there was evidence that

[2](2) Each person making the sale and every director, officer, partner, or agent of the seller, if the director, officer, partner, or agent has personally participated or aided in making the sale, is jointly and severally liable to the purchaser in an action for rescission, if the purchaser still owns the security, or for damages, if the purchaser has sold the security. Fla. Stat. 517.211(2) (2005).

[3] (1) It is unlawful and a violation of this chapter for any person to sell or offer to sell a security within this state unless the security is exempt under 517.051, is sold in a transaction exempt under 517.06, is a federal covered security, or is registered pursuant to this chapter.

(2) No securities that are required to be registered under this chapter shall be sold or offered for sale within this state unless such securities have been registered pursuant to this chapter and unless prior to each sale the purchaser is furnished with a prospectus meeting the requirements of rules adopted by the commission.

(3) The office shall issue a permit when registration has been granted by the office. A permit to sell securities is effective for 1 year from the date it was granted. Registration of securities shall be deemed to include the registration of rights to subscribe to such securities if the application under § 517.081 or 517.082 for registration of such securities includes a statement that such rights are to be issued.

(4) A record of the registration of securities shall be kept by the office, in which register of securities shall also be recorded any orders entered by the office with respect to such securities. Such register, and all information with respect to the securities registered therein, shall be open to public inspection.

(5) Notwithstanding any other provision of this section, offers of securities required to be

8

Austin "personally participated" in the sale of unregistered securities.

The test is twofold. First, in order to be in violation of § 517.211(2), one must be an officer, director, or agent of the corporation. The plaintiffs offered a plethora of evidence to prove this requirement. According to the record, Austin handled all the business aspects of the corporation, she opened the corporation's checking account, set up the company payroll, signed corporate checks, loaned money to the corporation, used her credit cards for corporate business and arranged and organized the corporation's Christmas party. In addition, Austin submitted the official form for transacting business in Florida, which she signed as Vice President and Registered Agent for the corporation. The evidence clearly demonstrates that Austin was an officer and director of this corporation.

However, when addressing part two of this test, the plaintiffs failed to introduce a scintilla of evidence proving that Austin "personally participated" in the selling of unregistered securities to the appellants. This claim hinges upon the dinner party attended by Wiles, Maggio, Reiser and Austin.[3] During this dinner, Reiser presented the "offering memorandum" and opportunities for third parties to

---

registered by this section may be made in this state before the registration of such securities if the offers are made in conformity with rules adopted by the commission. Fla. Stat. § 517.07 (2005).

[3] According to Wiles' testimony, this dinner party apparently occurred in June, 1997. This dinner party is different from the September, 1997 dinner party, where Austin was not in attendance.

invest in the company.[4]  However, the plaintiffs failed to introduce any evidence that demonstrated that Austin personally participated or aided in any of this solicitation.  The sole testimony presented on this issue was that of Richard Wiles. During the direct examination of Wiles he stated that Austin "was on board with the whole idea." Wiles was asked the following question and gave this answer:

**Question:  And did Ms. Austin, or did she not, participate in the discussions about the business?**

**Answer:  She did in just little additions, that she pretty much was on board with the whole idea and all was very favorable, everything that she said about the whole plan to move forward.**

We conclude, as did the trial judge, that this is simply not sufficient to show personal participation in the sale of these unregistered securities. The plaintiffs argue that the mere presence at the dinner meeting creates an "essential link in the sale" and subjects Austin to liability. However, that is not the proper test. The law requires some personal activity and involvement in the sale. This record contains no support for such a finding. Thus, the record offers no basis to support the jury's

---

[4] We note also that Austin had recently given birth and had the new born with her at the dinner.

verdict as to count II. We affirm the trial court's ruling.

The next issue presented by the cross-appeal is whether the district court properly denied Austin's renewed motion for judgment as a matter of law regarding the claim that Austin violated Florida's Uniform Fraudulent Transfer Act ("UFTA"). In order to prevail on a fraudulent transfer claim under Fla. Stat. § 726.105,[5] the plaintiffs were required to prove the following: (1) they were

---

[5](1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(a) With actual intent to hinder, delay, or defraud any creditor of the debtor; or
(b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

1. Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

2. Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

(2) In determining actual intent under paragraph (1)(a), consideration may be given, among other factors, to whether:

(a) The transfer or obligation was to an insider.
(b) The debtor retained possession or control of the property transferred after the transfer.
(c) The transfer or obligation was disclosed or concealed.
(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
(e) The transfer was of substantially all the debtor's assets.
(f) The debtor absconded.
(g) The debtor removed or concealed assets.
(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

creditors who were defrauded; (2) that Austin intended to commit the fraud; and, (3) that the fraud involved a conveyance of property that could have been applicable to the payment of the debt due. See Nationsbank, N.A. v. Coastal Utilities, Inc., 814 So.2d 1227, 1229 (Fla. 4th DCA 2002).

Upon examination of the record, it is evident that the plaintiffs produced overwhelming evidence to meet prongs (2) and (3) of the above mentioned test. The fraud is uncontested and Austin and Reiser made $190,000 in transfers that deprived the business of assets that could have been used to pay the debt created by the fraud in the inducement of the sale of stock.

On September 10, 1997, the plaintiffs invested $1,025,316.00 in this hoax company co-owned by Austin and her husband. On October 1, 1997, no more then 21 days later, two checks were drawn and deposited in a checking account held jointly by Austin and her husband. These checks were in the amount of $100,000 and $50,000. Within days of these deposits, Austin wrote a check to her mortgage company in the amount of $49,919.12 to pay off the mortgage on her home in full. Later that day, Austin wrote a second check in the amount of $35,588.27 to pay

---

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.
(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor. Fla. Stat. § 726.105 (2005).

off the mortgage on her mother's home in full. Austin admitted that she had access to this joint checking account and testified that she knew the two checks would not have cleared had she not made the deposits outlined above.

Shortly after depositing the two checks in the amount of $150,000 in the joint checking account, Reiser created false minutes of a board meeting that never occurred. This was done in order to obtain a promissory note from the company to Reiser and Austin in the sum of $2,000,000. This note was allegedly repayment for additional computer software and equipment that was purchased by them for the business. It is undisputed that this promissory note was executed on fraudulent grounds. There was no such purchase. On October 10, 1997, a $20,000 check was issued to Reiser and Austin as a partial payment on this promissory note. Ten days later, another $20,000 check was issued for the same purpose. It is undisputed that the company's business plan was a fraud, the financial records were a fraud and the purported software and equipment were a fraud.

In the span of forty days, Austin and her husband made four fraudulent transfers totaling $190,000: (1) the $100,000 check; ( 2) the $50,000 check; ( 3) the first $20,000 repayment on the bogus promissory note; and, ( 4) the second $20,000 repayment. The jury returned verdicts in the sum of $190,000 against both Austin and Reiser for fraudulently transferring assets. They found Austin and

13

Reiser jointly and severally liable to the plaintiffs for these monies.

The only additional question that remains is whether the plaintiffs are deemed "creditors" pursuant to Florida's Uniform Fraudulent Transfer Act. The FUFTA defines a "creditor" as "a person who has a claim." Fla. Stat. § 726.102(4) (2005). In addition, a "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." Fla. Stat. § 726.102(3) (2005). This language is extremely broad.

We conclude that under the language of the statute the plaintiffs are creditors and have valid claims to recover the $190,000 of fraudulent transfers. Based on fraudulent representations about the business and its assets, the plaintiffs invested over $1 million dollars in this company. These fraudulent misrepresentations induced the plaintiffs into investing in this company. Within months of this investment, the company went under, the money disappeared and the plaintiffs lost their investment. The jury found that the plaintiffs were fraudulently induced into investing in this corporation. By virtue of such, the plaintiffs clearly became "creditors" as defined in the statute. It is undisputed that Austin committed the act of fraudulently transferring assets from the corporation. Austin and her husband took $190,000 of the plaintiffs invested money and used it

for non-business personal purposes, monies that could have been used to pay back the plaintiffs. The jury also found both Austin and Reiser liable for receiving the benefits of these fraudulent transfers.

Alternatively, as we read the FUFTA, these plaintiffs, as shareholders, became "creditors" of Reiser and Austin when the fraudulent checks were taken from the corporation and deposited in their personal account. As invested shareholders of this corporation the plaintiffs had a right to expect that the invested monies would be used for legitimate business purposes. Once Reiser and Austin decided to use the plaintiffs' monies for non-business purposes, the plaintiffs became creditors and possessed a viable claim according to the FUFTA. Therefore, we agree with the district court's denial of Austin's renewed motion as a matter of law as to count four, fraudulently transferring assets.

## V. Conclusion:

After carefully reviewing the record, we conclude that the plaintiffs have failed to offer evidence that Austin "personally participated" in the sale of unregistered securities in violation of Fla. Securities and Investor Protection Act ("FSIPA") §§ 517.07, 517.211. With regard to Austin's cross-appeal, we hold that the lower court was correct in holding that Austin and her husband were jointly

15

and severally liable for the $190,000 that was fraudulently transferred from the corporation.

AFFIRMED