DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**MANE FL CORP.,**
Appellant,

v.

**CALE BECKMAN** and **MALGORZATA BECKMAN,**
Appellees.

No. 4D21-3424

[January 4, 2023]

Appeal from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; David Haimes, Judge; L.T. Case No. CACE17-007057 (08).

Joseph S. Hughes of The Law Office of Joseph Hughes, P.A., Fort Lauderdale, for appellant.

Allen M. Levine, Darren M. Goldman, and Yasin Daneshfar of Becker & Poliakoff, P.A., Fort Lauderdale, for appellees.

GROSS, J.

Mane FL Corp. appeals a final summary judgment declaring that a transfer of a condominium unit to Mane was void as a fraudulent transfer. We affirm the summary judgment's application of Florida's Uniform Fraudulent Transfer Act. The undisputed existence of seven badges of fraud supports the trial court's ruling, and the trial court properly rejected Mane's good faith defense.

## I. Facts and Procedural History

*The Judgment Creditors Purchase a Home from Duck Eye*

In August 2016, Cale and Malgorzata Beckman paid $880,000 to purchase a residential property in Parkland, Florida (the "Parkland Property") from Duck Eye, LLC ("Duck Eye"), whose two members and managers were Nicolas Barcan ("Nicolas") and his wife, Melanie Radic ("Radic"). Before the sale, the Parkland Property was Duck Eye's sole asset.

After the closing, the Beckmans discovered that the Parkland Property suffered from a defect that caused high levels of humidity and mold growth. Duck Eye and its members were aware of the defect and failed to disclose it to the Beckmans. Instead, Duck Eye concealed the defect by hiding, painting, or covering the areas affected by mold growth.

*The Underlying Lawsuit and Judgment*

In April 2017, the Beckmans sued Duck Eye for fraudulent concealment, breach of contract, and related claims. In 2019, the Beckmans obtained a judgment against Duck Eye in the amount of $417,077.53, plus pre-judgment interest.

*Transfers Related to the 2700 Property*

Meanwhile, three days after selling the Parkland Property to the Beckmans, Duck Eye purchased real property known as the 2700 Property for $920,000. The 2700 Property was Duck Eye's only asset at the time.

In November 2017, while the underlying lawsuit was in progress, Duck Eye transferred the 2700 Property to its two managers, Nicolas and Radic, by quit claim deed for $100. Nicolas and Radic paid 70 cents in documentary stamp costs for the transaction. Duck Eye did not disclose to the Beckmans that the 2700 Property had been transferred to Nicolas and Radic.

The trial court would later rule that Duck Eye's transfer of the 2700 Property to Nicolas and Radic was a fraudulent transfer.

On April 30, 2018, Nicolas and Radic sold the 2700 Property for about $1,000,000. Nicolas and Radic instructed the escrow agent to wire $370,857.53 of the $1,000,000 proceeds to a trust account belonging to their attorney, which the escrow agent did on May 7, 2018.

*Transfers Related to the Aventura Unit*

Meanwhile, on April 20, 2018, Nicolas and Radic entered into a contract to buy a condominium unit in Aventura (the "Aventura Unit") from a seller for $400,000. They later executed an addendum to the contract, changing the buyer's name to "Mane FL Corp." Nicolas's father, Adrian Barcan, attested that he is the sole shareholder of Mane.

The sale of the Aventura Unit closed on or about May 7, 2018. The attorney who represented Nicolas and Radic in the sale of the 2700 Property also served as the escrow agent for the sale of the Aventura Unit.

On May 7, 2018, the attorney transferred the $370,857.53 from the original trust account to a second trust account. The amount due at closing was $369,876.05.

On May 8, 2018, the attorney wired $369,876.05 to the seller's assignee, sending the money from the second trust account. The attorney followed the disbursement instructions he received from Nicolas or Radic.

Nicolas and Radic did not disclose any of those transfers to the Beckmans.

### Judgment in Proceedings Supplementary is Entered Against Nicolas and Radic

After the Beckmans obtained the judgment against Duck Eye, they commenced a proceeding supplementary in which they impleaded Nicolas and Radic, asserting that the transfer of the 2700 Property from Duck Eye to Nicolas and Radic was fraudulent. The Beckmans also asserted that Nicolas and Radic were the alter egos of Duck Eye.

The trial court entered defaults against Nicolas and Radic for their failure to respond to the proceeding supplementary.

In February 2021, the trial court entered final judgment against Duck Eye, Nicolas, and Radic in the proceeding supplementary, ruling that: (1) the transfer of the 2700 Property from Duck Eye to Nicolas and Radic for $100 was a fraudulent transfer with the intent to hinder, delay, or defraud the Beckmans; and (2) Nicolas and Radic were the alter egos of Duck Eye.

The trial court voided the transfer of the 2700 Property and determined that the $1,000,000 proceeds from the sale of the 2700 Property belonged to Duck Eye.

### Beckmans' Proceedings Supplementary Against Mane

Meanwhile, in September 2020, the Beckmans filed their Second Amended Proceeding Supplementary Complaint in which they impleaded Mane and asserted in relevant part that: (1) the purchase of the Aventura Unit with the proceeds from the sale of the 2700 Property was a fraudulent

3

transfer; and (2) Nicolas and Radic were the alter egos of Mane. Mane answered and raised affirmative defenses.

*The Motion for Summary Judgment*

The Beckmans moved for partial summary judgment on their fraudulent transfer claim only.

Mane filed its opposition to summary judgment, which Mane later amended. Mane argued that: (1) the Beckmans failed to establish the absence of a genuine issue of fact as to whether Nicolas, Radic, or Duck Eye had ownership or control over Mane; and (2) Mane received the funds for the purchase of the Aventura Unit in good faith and for reasonably equivalent value.

In support of its opposition to summary judgment, Mane filed the affidavit of Adrian Barcan (the "Barcan Affidavit"), which essentially claimed that Nicolas purchased the Aventura Unit for Mane as repayment of a loan that Adrian had given him. Specifically, Adrian stated:

- He is the sole shareholder and officer of Mane.

- He is a citizen of Argentina and resides in San Martin De Los Andes.

- From the period of June 2015 to 2017, he "sent a series of checks to Nicolas, which totaled approximately $414,000.00, with the express expectation, understanding, and verbal agreement" that Nicolas would pay this money back. He provided the Beckmans with copies of all these checks in discovery.

- He formed Mane solely for the purpose of acquiring, owning, and leasing the Aventura Unit, which he planned to use as a vacation home and as a rental unit.

- At the time Mane purchased the Aventura Unit, Nicolas still owed him approximately $414,000.00 from the payments he sent to Nicolas from 2015 to 2017, so he asked Nicolas to satisfy the debt by remitting the funds into escrow to purchase the Unit for him, which Nicolas agreed to do.

- In satisfaction of the debt, Nicolas remitted the funds into escrow so that Mane could purchase the Aventura Unit.

4

• He did not have reason to believe, nor was he aware of, any fraudulent actions concerning the funds or any claim to the funds by third parties.

• He did not become aware that the funds were being claimed by the Beckmans until the instant action was filed against him.

• The Aventura Unit had always been solely owned and controlled by Mane, and he was "its sole controller and shareholder." Neither Nicolas, Radic, nor Duck Eye have had any ownership of, control over, or financial interest in the Unit at any time.

Although the Beckmans moved to strike the Barcan Affidavit as a sham, the trial court did not do so.

*The Summary Judgment Hearing*

At the summary judgment hearing, Mane's counsel conceded that Mane was not disputing "any of the actual transaction[s]" or the "tracing of the money." Instead, Mane argued that Adrian did not know anything about the source of the funds, as he believed that "these were Nicolas's funds that he was putting into escrow to buy the property as sort of repayment for all the payments that [Adrian] had been sending him."

At the end of the hearing, the trial court granted the Beckmans' motion for partial summary judgment, reasoning:

There are no genuine issues of material fact, and everything that's been established has established these were the direct proceeds that belonged to the plaintiff[s] at the time and now are in a condo, notwithstanding the affidavit of Mr. Barcan. So there are no genuine issues of material fact, and plaintiff is entitled to partial summary judgment, so the motion is granted.

The trial court then clarified that it was granting final summary judgment on the fraudulent transfer claim, as the Beckmans explained that the remaining alter ego claim was merely an alternative theory of liability.

5

The trial court entered final summary judgment in favor of the Beckmans, concluding that there were no genuine disputes of material fact and that the transfer of the Aventura Unit to Mane was void as a fraudulent transfer.

The written order referenced the assertions in the Barcan Affidavit and explained why those facts, even if true, did not affect the court's ruling.

Specifically, the trial court ruled that the Beckmans were entitled to judgment on their fraudulent transfer claim because the record evidence proved seven badges of fraud.

The trial court further concluded that Mane's affirmative defenses failed as a matter of law.

The trial court rejected Mane's defense that it was a good faith transferee for reasonably equivalent value. This defense was premised on the alleged loan from Adrian to Nicolas, but the trial court explained that the defense "is only available to the transferee—in this case Mane—and Mane did not pay any value, reasonable or otherwise, for the Aventura Unit in exchange for the transfer."

Although Nicolas's purchase of the Aventura Unit for Mane "was purportedly to pay back a loan from Adrian Barcan," the trial court emphasized that "the lender was Adrian Barcan, not Mane." Applying the rule that "corporations are legal entities separate and distinct from the persons comprising them," the trial court concluded: "So, even if such a loan existed, it would not change the conclusion that Mane paid nothing for the Aventura Unit and, hence is not a good faith transferee for a reasonably equivalent value."

Mane moved for rehearing and attached affidavits from Adrian Barcan and a tax preparer. The new affidavits addressed issues covered in the Beckmans' motion to strike. The trial court denied the motion for rehearing.

## II. The Trial Court Properly Granted the Motion for Summary Judgment Under the Florida Uniform Fraudulent Transfer Act

Mane argues that there were genuine issues of material fact that precluded summary judgment. The Beckmans counter that the substitution of Mane as the buyer of Aventura was a fraudulent transfer.

*Summary Judgment Standard*

Florida's new summary judgment rule governs the adjudication of any summary judgment motion decided on or after May 1, 2021, including in pending cases. *In re Amends. to Fla. R. of Civ. P. 1.510*, 317 So. 3d 72, 77 (Fla. 2021). The new rule is to be applied in accordance with the federal summary judgment standard. *Id.* at 74.

The rule now provides that summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fla. R. Civ. P. 1.510(a). "[T]he correct test for the existence of a genuine factual dispute is whether 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *In re Amends. to Fla. R. Civ. P. 1.510*, 317 So. 3d at 75 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Stated another way, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. The "mere existence of a scintilla of evidence" in support of the non-movant's position is insufficient to defeat summary judgment. *Id.* at 252.

*The Record Establishes as a Matter of Law that Nicolas and*
*Radic Had Fraudulent Intent in Transferring the Aventura Unit*

Under Florida's Uniform Fraudulent Transfer Act ("UFTA"), a transfer is fraudulent as to a creditor if the debtor made the transfer "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor." § 726.105(1)(a), Fla. Stat. (2017).

Because establishing actual intent through direct proof is difficult, the UFTA looks to circumstantial indicia of intent commonly known as "badges of fraud." *Amjad Munim, M.D., P.A. v. Azar*, 648 So. 2d 145, 152 (Fla. 4th DCA 1994). Courts may consider, among other factors, whether:

(a) The transfer or obligation was to an insider.

(b) The debtor retained possession or control of the property transferred after the transfer.

(c) The transfer or obligation was disclosed or concealed.

7

(d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

(e) The transfer was of substantially all the debtor's assets.

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

§ 726.105(2)(a)-(k), Fla. Stat. (2017). "The language of the statute makes clear that the badges of fraud are nonexclusive and that courts may consider other factors in determining a debtor's intent." *In re Jennings*, 332 B.R. 465, 469 (Bankr. M.D. Fla. 2005).

"While one specific badge of fraud is insufficient to establish fraudulent intent, several of them together may afford a basis to infer fraud." *Nat'l Mar. Servs., Inc. v. Straub*, 979 F. Supp. 2d 1322, 1328 (S.D. Fla. 2013) (internal quotation marks omitted). Two or three badges of fraud can be enough to support a finding of actual intent to defraud. *See Jennings*, 332 B.R. at 472 & n.7 (finding actual intent to defraud based upon two badges of fraud, coupled with the timing of the transaction); *In re Toy King Distrib., Inc.*, 256 B.R. 1, 139–41 (Bankr. M.D. Fla. 2000) (finding actual intent to defraud based upon "at least three" badges of fraud); *see also S.E.C. v. Elliott*, 953 F.2d 1560, 1568 (11th Cir. 1992) (concluding that two badges of fraud "may very well be enough to support the district court's finding that the bonds were transferred with intent to defraud," but remanding for further proceedings on the debtors' defenses).

The existence of badges of fraud creates a prima facie case, thereby raising a rebuttable presumption that the transaction is void. *Gen. Elec.*

*Co. v. Chuly Int'l, LLC,* 118 So. 3d 325, 327 (Fla. 3d DCA 2013). Once a prima facie case has been established, the burden shifts to the party defending the transfer to show that it was made without intent to "delay, hinder or defraud creditors." *Mejia v. Ruiz,* 985 So. 2d 1109, 1114 (Fla. 3d DCA 2008).

Applying Florida's old summary judgment standard, this court once declared that summary judgment is available in fraudulent transfer cases "only in extraordinary circumstances." *Nationsbank, N.A. v. Coastal Utils., Inc.,* 814 So. 2d 1227, 1231 (Fla. 4th DCA 2002). However, in light of the new summary judgment rule, that observation no longer applies.

Under the newly-adopted federal standard, if "the evidence is one-sided, the plaintiff may be entitled to summary judgment on a fraudulent transfer claim." *In re Bifani,* No. 8:12-bk-00562-MGW, 2014 WL 12795661, at *6 (M.D. Fla. Feb. 13, 2014), *aff'd in part, rev'd in part on other grounds*, 580 F. App'x. 740 (11th Cir. 2014). For example, the Eleventh Circuit has affirmed a summary judgment on a fraudulent transfer claim where four badges of fraud were present. *In re Bifani,* 580 F. App'x. 740, 745–47 (11th Cir. 2014); *accord In re Truong,* 285 F. App'x. 837, 840 (3d Cir. 2008) (concluding that the district court correctly affirmed the bankruptcy court's summary judgment based upon five badges of fraud).

Here, the record demonstrates that the Beckmans established at least seven badges of fraud.

### Badge #1: Whether the Transfer was to an Insider

Under Florida law, an "'Insider' includes" a "relative of a general partner, director, officer, or person in control of the debtor." § 726.102(8)(b)6., Fla. Stat. (2017). The statute's use of the word "includes" suggests that the statutory definition of "Insider" is listing non-exhaustive examples. Moreover, "[a] close relationship between a transferor debtor and a transferee is a factor equivalent to a badge of fraud which should be considered in determining fraudulent intent." *Gen. Trading Inc. v. Yale Materials Handling Corp.,* 119 F.3d 1485, 1499 (11th Cir. 1997).

Here, Mane is a corporation and thus is not a relative of Nicolas, who was a person in control of Duck Eye. Still, the trial court was permitted to consider the evidence that Mane's sole shareholder is Nicolas's father, Adrian. Therefore, the trial court could find that the transfer of the Aventura Unit to Mane was the functional equivalent of a transfer between insiders or was otherwise a factor equivalent to a badge of fraud. *See In re Bifani,* 580 F. App'x. at 745 (affirming the bankruptcy court's finding

9

that the transferee was "the functional equivalent of an 'insider' based on her long-term relationship and cohabitation with [the debtor]," but explaining that, even if the definition of "insider" did not include the transferee, the bankruptcy court still "did not err in considering the relationship between [the debtor] and [the transferee] as the equivalent of a badge of fraud").

## Badge #2 – Whether the Transfer was Disclosed or Concealed

Here, the relevant transfers were concealed from the Beckmans. Nicolas and Radic did not disclose to the Beckmans the purchase of the Aventura Unit with funds obtained through the sale of the 2700 Property. Nor did they disclose to the Beckmans the transfer of the Aventura Unit to Mane, which was accomplished through the execution of an addendum to the sales contract changing the buyer's name from Nicolas and Radic to Mane. The trial court properly found the presence of this badge of fraud.

## Badge #3 – Before the Transfer Was Made, the Debtor had been Sued

Before the transfer was made, Duck Eye had been sued. The record shows that, while the Beckmans' lawsuit against Duck Eye was pending, Duck Eye transferred the 2700 Property to Nicolas and Radic in exchange for nominal consideration, and then Nicolas and Radic sold the 2700 Property and used the proceeds to purchase the Aventura Unit for Mane. Thus, the trial court properly found the presence of this badge of fraud.

## Badge #4 – The Transfer was Substantially All of the Debtor's Assets

Here, the 2700 Property, Duck Eye's sole asset, was transferred to Nicolas and Radic for nominal consideration. After Nicolas and Radic sold the 2700 Property and made disbursements to various third parties, they used the remaining cash from the sale—$370,857.53—to purchase the Aventura Unit for Mane. The Beckmans were unable to locate any other assets belonging to Nicolas or Radic from which to satisfy their judgment. Thus, the record supports the trial court's conclusion that the transfer of the Aventura Unit to Mane was substantially all of the assets owned by Nicolas or Radic.

## Badge #5 – The Debtor was Insolvent or Became Insolvent Shortly After the Transfer

"A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation." § 726.103(1), Fla. Stat. (2017). The term "asset" does not include property that "is generally exempt under nonbankruptcy law." § 726.102(2)(b), Fla. Stat. (2017). Further, "[a] debtor who is generally not paying his or her debts as they become due is presumed to be insolvent." § 726.103(2), Fla. Stat. (2017).

Here, not long after the transfer of the Aventura Unit, the trial court entered judgments against Duck Eye, Nicolas, and Radic. The judgments remain unsatisfied. And, following the transfer of the Aventura Unit, the Beckmans have been unable to locate any other assets of the debtors from which to satisfy the judgments. Thus, the record supports the trial court's conclusion that the debtors were insolvent or became insolvent shortly after the transfer of the Aventura Unit was made.

### Badge #6 – The Debtor Removed or Concealed Assets

The debtors did not disclose any of the following events to the Beckmans: Duck Eye's acquisition of the 2700 Property, Duck Eye's transfer of the 2700 Property to Nicolas and Radic for nominal consideration, the sale of the 2700 Property, the purchase of the Aventura Unit with the proceeds from the sale of the 2700 Property, or the transfer of the Aventura Unit to Mane via an addendum to the contract changing the name of the buyer. Thus, the record supports the trial court's conclusion that the debtors removed or concealed assets.

### Badge #7 – The Debtor Absconded

Here, after a diligent search, the Beckmans were unable to locate either Nicolas or Radic. They relied upon substituted service to serve them with the motion for proceedings supplementary. Further, Duck Eye was administratively dissolved for failing to file annual reports. Thus, the record supports the trial court's conclusion that the debtors absconded.

### Summary

Given the existence of at least seven badges of fraud, the evidence in this case is so "one-sided" that the only reasonable conclusion is that Nicolas and Radic transferred the Aventura Unit to Mane with the actual intent to defraud the Beckmans.

11

*Mane's Good Faith Defense Fails as a Matter of Law*

Mane argues that it is entitled to the benefit of a statutory good faith defense. We reject that claim because Mane did not exchange reasonably equivalent value for the Aventura Unit, nor was it a subsequent transferee of a person who took in good faith and for a reasonably equivalent value.

Under the UFTA, a transfer "is not voidable under s. 726.105(1)(a) against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." § 726.109(1), Fla. Stat. (2017). "Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred *or an antecedent debt is secured or satisfied*[.]" § 726.104(1), Fla. Stat. (2017) (emphasis added).

The analysis of reasonably equivalent value "focuses on the benefit actually obtained by the debtor in the transaction." *In re Berkman*, 517 B.R. 288, 301 (Bankr. M.D. Fla. 2014). "And reasonably equivalent value need not be dollar-for-dollar." *Id.* at 302.

Mane argues that Adrian, who attested that he had lent Nicolas over $400,000, was "the original constructive recipient" of the funds used to purchase the Aventura Unit. Rather than personally accepting the funds, the argument goes, Adrian "skipped an unnecessary step" by "constructively receiving" the funds. In exchange, the argument goes, Adrian provided reasonably equivalent value by satisfying the debt owed to him by Nicolas. Thus, Mane contends that "[b]ecause Adrian, as the initial transferee, received the Funds in good faith for reasonably equivalent value, and because [Mane] received the Funds as a subsequent transferee, [Mane] was not required to pay a reasonably equivalent value."

Mane's good faith defense turns on whether Adrian was "a person who took in good faith and for a reasonably equivalent value." As a matter of statutory interpretation, Mane is correct that *if* Adrian was "a person who took in good faith and for a reasonably equivalent value," and *if* Mane was a "subsequent transferee" of Adrian, then Mane would not have been required to exchange reasonably equivalent value to either Nicolas or Adrian.

But Adrian was not a transferee of the Aventura Unit, nor was he a transferee of the funds used to purchase the Aventura Unit. In short, Adrian never "took" the Aventura Unit or the funds used to purchase it within the meaning of section 726.109(1).

"The general rule is that corporations are legal entities separate and distinct from the persons comprising them." *Am. States Ins. Co. v. Kelley*, 446 So. 2d 1085, 1086 (Fla. 4th DCA 1984). A share of stock does not vest the owner with any right or title to any of the corporation's property. *Corp. Express Office Prods., Inc. v. Phillips*, 847 So. 2d 406, 412 (Fla. 2003) (citing *Cruising World, Inc. v. Westermeyer*, 351 So. 2d 371, 373 (Fla. 2d DCA 1977)). When property is transferred to a corporation, the law does not treat the principal of the corporation as the recipient of the property.

Mane asks this court to pretend that Adrian was the recipient of the funds used to purchase the Aventura Unit. But Mane's theory that Adrian was the "constructive recipient" of the funds is inconsistent with the plain language of section 726.109(1). Having chosen to conduct business through corporations, the Barcans cannot disregard a corporate structure when it becomes inconvenient to a legal theory they wish to pursue.

Mane itself does not qualify as a "person who took in good faith and for a reasonably equivalent value." Mane's argument disregards the fact that corporations are legal entities distinct from the persons who own them. Regardless of whether Mane took the Aventura Unit in good faith, Mane did not take the property "for a reasonably equivalent value." Mane paid nothing for the Aventura Unit.

Nor was Mane a subsequent transferee of a person who took in good faith and for a reasonably equivalent value. As explained above, even if a loan existed from Adrian to Nicolas, Adrian was not a transferee of the Aventura Unit or the funds used to purchase it. Adrian never exercised any dominion or control over the funds used to purchase the Aventura Unit, nor did Adrian ever hold title to the Aventura Unit. Instead, the funds used to purchase the Aventura Unit were wired from the proceeds of the sale of the 2700 Property into the trust account of Nicolas's attorney, who then wired the funds to the assignee of the Aventura Unit's seller on behalf of Mane, the buyer identified in an addendum to the sales contract.

This case involved a real estate shell game with shifting corporate ownerships that cannot survive the legal scrutiny required under the plain language of the Uniform Fraudulent Transfer Act. The trial court properly entered summary final judgment on the fraudulent transfer claim.

*Mane's Procedural Arguments are Without Merit*

Finally, we reject appellant's two procedural arguments. Mane complains that the trial court improperly struck the Barcan Affidavit, but the premise of the argument is flawed. The record establishes that the

trial court never ruled on the motion to strike. This is clear from both the court's oral ruling at the summary judgment hearing and the court's later written final judgment. The final judgment referenced facts alleged in the Barcan Affidavit, but concluded that those facts did not create a genuine factual dispute.

Mane next argues that the court erred in denying its motion for rehearing in light of new affidavits asserting additional facts. There was no abuse of discretion in the trial court's determination "that a counter-affidavit presented for the first time on rehearing of a summary judgment is too late." *Pangilinan v. Broward Cnty.*, 914 So. 2d 1094, 1097 (Fla. 4th DCA 2005); *see also* Fla. R. Civ. P. 1.510(c)(5) (providing that the nonmoving party to a summary judgment motion "must serve a response" to the motion "[a]t least 20 days before the time fixed" for the summary judgment hearing). Rule 1.510(e) affords the trial judge broad discretion in handling a failure "to properly address another party's assertion of fact." Regardless, the new affidavits essentially sought to rebut certain accusations in the motion to strike, but the additional facts set forth in the affidavits were irrelevant to the reasons the trial court granted summary judgment on the fraudulent transfer claim.

*Affirmed.*

LEVINE and CONNER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***